UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WATERLOO CAPITAL PARTNERS, LLC,

v.

BWX LIMITED,

                                    Defendant.

No. 18-CV-6542 (RA)

ORDER

RONNIE ABRAMS, United States District Judge:

On July 20, 2018, this action was removed to this Court from the Supreme Court of New York, New York County. When the case was still before the state court, Plaintiff Waterloo Capital Partners, LLC ("Waterloo" or "WCP") moved to disqualify Defendant BWX Limited's ("BWX") counsel, Curtis, Mallet-Prevost, Colt & Mosle LLP ("Curtis"), pursuant to Rules 1.9 and 3.7 of the New York Rules of Professional Conduct. Once the possibility of removal was raised, the state court decided to defer ruling on the motion, and thus Plaintiff again pressed for disqualification once the parties appeared in this Court. *See* Dkt. 12. After review of the parties' submissions, the Court denies Plaintiff's motion to disqualify Defendant's counsel for the following reasons.

In order to "preserve the integrity of the adversary process," courts have the "inherent power" to disqualify an attorney. *Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005). This decision is "a matter committed to the sound discretion of the district court." *Purgess v. Sharrock*, 33 F.3d 134, 144 (2d Cir. 1994). Nonetheless, "the Second Circuit requires a high standard of proof on the part of the party seeking to disqualify an opposing party's counsel in order to protect a client's

right to freely choose counsel." *Kubin v. Miller*, 801 F. Supp. 1101, 1113 (S.D.N.Y. 1992). "Although [judicial] decisions on disqualification motions often benefit from guidance offered by the American Bar Association (ABA) and state disciplinary rules, such rules merely provide general guidance," and thus are not binding authority. *Hempstead Video, Inc.*, 409 F.3d at 132.

Citing Rule 1.9, Plaintiff argues for the disqualification of Curtis on two independent grounds. First, Plaintiff contends that Curtis' representation of BWX violates Rule 1.9(a), which bars "[a] lawyer who has formerly represented a client in a matter . . . [from] represent[ing] another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing." N.Y. R. Prof'l Conduct § 1.9(a). Plaintiff argues that it formed an attorney-client relationship with Curtis when Curtis worked on the project to create a private equity vehicle. *See* Dkt. 5, Ex. 11 (McKinley Affirmation) ¶ 66. Plaintiff, however, has not met its burden under Rule 1.9(a) of establishing that an attorney-client relationship was formed between it and Curtis as a result of work on that project.

Although there need not be a formal agreement to establish an attorney-client relationship, there must have been some affirmative acceptance by Curtis to represent Plaintiff. *See Sucese v. Kirsch*, 199 A.D.2d 718, 719 (3d Dep't 1993) ("It is fundamental that an explicit undertaking to perform a specific task is required to establish an attorney-client relationship."). Plaintiff, however, has failed to show "that Curtis []ever assumed an affirmative duty to represent [it]." Dkt. 5, Ex. 12 at 8. Rather, Plaintiff and Curtis worked together – as consultant and counsel, respectively – on BWX's behalf to create a

private equity vehicle. *See* Dkt. 5, Ex. 13 (Goodman Decl.) ¶ 12 ("To my mind, Mr.

Fabregas was simply continuing his role as an outsider advisor and business broker[.]").

For instance, both Plaintiff and Curtis agree that BWX asked – or even directed – them to

work together on this project. *See* Dkt. 5, Ex. 9 (Fabregas Affirmation) ¶ 7 ("[Plaintiff] at

BWX's direction worked with BWX's attorneys, Curtis, to create the private equity

vehicle[.]"); Dkt. 5, Ex. 13 (Goodman Decl.) ¶ 6 ("I was asked by Aaron Finlay to work

with Mr. Fabregas on legal matters related to this new project as they might arise."). In

addition, Defendant paid all of Curtis' legal fees associated with this project. *See* Dkt. 5,

Ex. 9 (Fabregas Affirmation) ¶ 25 ("I asked Finlay on February 7, 2018, how Curtis was

being paid and Finlay indicated that BWX was paying for the legal fees."). "[A]lthough

a fee arrangement is not necessary for the establishment of an attorney-client relationship,

the absence of such an arrangement can be an indication that an attorney-client

relationship never existed." *Kubin*, 801 F. Supp. at 1115. Simply because Plaintiff may

have believed that Curtis was representing it – in addition to BWX – when working on

this project is not enough to establish an attorney-client relationship.[1] *See id.*

("[A]lthough the so-called client's subjective belief can be considered by the court, this

belief is not sufficient to establish an attorney-client relationship." (internal citation

omitted)).

Next, Plaintiff argues that Curtis should also be disqualified under Rule 1.9(c)

because it is prohibited from using confidential information that it gained when it

---

[1] To the extent that Plaintiff believes it was a "member and manager" of the private equity vehicle
and thus also represented by Curtis, *see* Dkt. 5, Ex. 11 (McKinley Affirmation) ¶¶ 66, 68, that too does not
establish the existence of an attorney-client relationship. Whatever representation Curtis provided for
BWX on that project was for BWX – not its employees, partners, or, in this case, its consultant. *See*
*Campbell v. McKeon*, 75 A.D.3d 479, 480-81 (1st Dep't 2010) ("A lawyer's representation of a business
entity does not render the law firm counsel to an individual partner, officer, director, or shareholder unless
the law firm assumed an affirmative duty to represent that individual.").

represented Plaintiff on a short-term project from November 2017 to January 2018 when

Plaintiff was considering acquiring Indigo Wild LLC (the "Indigo transaction").[2] *See*

Dkt. 5, Ex. 11 (McKinley Affirmation) ¶¶ 16-17, 68.  But Plaintiff has not shown there is

"a reasonable probability of disclosure" of confidential information by Curtis in this

litigation, as is required for a violation of Rule 1.9(c).  *Greene v. Greene*, 47 N.Y.2d 447,

453 (1979).  Plaintiff only conclusorily asserts that, "[a]s part of Curtis' representation of

WCP it learned confidential information regarding WCP's business and there is an

extremely high likelihood that Curtis is using this confidential information to the

advantage of BWX and disadvantage of WCP."  Dkt. 5, Ex. 11 (McKinley Affirmation) ¶

68.  As BWX notes, Plaintiff thus does not offer a "further statement of what confidential

information Waterloo imparted to Curtis; no[r] [an] explanation of how it is 'highly

likely' to be used against Waterloo in the underlying case."  Dkt. 5, Ex. 12 (Defendant's

Opposition Brief) at 10.  In addition, counsel who assisted Plaintiff on the Indigo

transaction denies that Curtis "receive[d] any confidential information concerning

Waterloo on th[e] [Indigo] engagement, especially since [the] focus was on the target,

Indigo, and its internal financial, corporate and strategic affairs."  Dkt. 5, Ex. 13

(Goodman Decl.) ¶ 19.  Courts have been cautioned against accepting these conclusory

claims as a basis for disqualification because "[a]llowing a party . . . to meet its burden by

generalized assertions of 'access to confidences and secrets' would both make it difficult,

if not impossible, to test those assertions and encourage the strategic use of such

motions."  *Jamaica Pub. Serv. Co. v. AIU Ins. Co.*, 92 N.Y.2d 631, 639 (1998).  For this

reason, Rule 1.9(c) also does not provide a basis for disqualifying Curtis.

---

[2] Notably, Plaintiff's contractual arrangement with Curtis for the Indigo transaction contained a general waiver of potential conflicts.  *See* Dkt. 5, Ex. 11 (McKinley Affirmation) ¶ 68.

Next, Plaintiff attempts to argue for disqualification under both subsection (a) and (b) of Rule 3.7. *See* Dkt. 5, Ex. 11 (McKinley Affirmation) ¶¶ 70-80. As an initial matter, Plaintiff fails to provide a sufficient basis to disqualify two of Curtis' transactional attorneys, Lawrence Goodman and Douglas Glazer, under Rule 3.7(a). With several exceptions that are inapplicable here, Rule 3.7(a) provides that "[a] lawyer shall not act as advocate before a tribunal in a matter in which the lawyer is likely to be a witness on a significant issue of fact[.]" N.Y. R. Prof'l Conduct § 3.7(a). Plaintiff asserts that Goodman and Glazer are necessary witnesses whose "testimony would go directly to the central issue in this case" and they should thus be disqualified. Dkt. 5, Ex. 11 (McKinley Affirmation) ¶ 71.

Whether they are necessary witnesses is inconsequential to this 3.7(a) analysis, however, because neither Goodman nor Glazer – both corporate attorneys at Curtis – are advocates for Defendant in this litigation. *See* Dkt. 5, Ex. 12 at 13 ("[T]here is no suggestion that either Goodman or Glazer – both corporate attorneys, not litigators – will play any advocate's role at trial."); Dkt. 5, Ex. 13 (Goodman Decl.) ¶ 13 ("I will not be acting in any litigation capacity in connection with this case."). Plaintiff does not directly dispute these statements, but insists that they are involved because Plaintiff interacted with Goodman in pre-litigation settlement discussions. *See* Dkt. 5, Ex. 18 (E-Mails from June & July 2018). The scope of Rule 3.7(a) is not as expansive as Plaintiff contends, but covers only lawyers who are "advocat[ing] before a tribunal." *See Murray v. Met. Life Ins. Co.*, 583 F.3d 173, 179 (2d Cir. 2009) (concluding that three transactional lawyers and one litigator, who "will not act as an advocate before the jury," cannot "properly [be]

considered trial counsel for purposes of Rule 3.7(a)"). As such, Rule 3.7(a) has no bearing here.

Finally, Plaintiff argues that Curtis should be disqualified as a firm under Rule 3.7(b) because Goodman and Glazer are necessary fact witnesses. *See* Dkt. 5, Ex. 11 (McKinley Affirmation) ¶¶ 79-80. Under Rule 3.7(b), "[a] lawyer may not act as advocate before a tribunal in a matter if . . . another lawyer in the lawyer's firm is likely to be called as a witness on a significant issue other than on behalf of the client, and it is apparent that the testimony may be prejudicial to the client[.]" N.Y. R. Prof'l Conduct § 3.7(b). Understanding that "Rule 3.7 lends itself to opportunistic abuse," the Second Circuit has concluded that "disqualification by imputation should be ordered sparingly, and only when the concerns motivating the rule are at their most acute." *Murray*, 585 F.3d at 178. The Second Circuit thus requires the movant, by clear and convincing evidence, to demonstrate "specifically how and as to what issues in the case the prejudice may occur and that the likelihood of prejudice occurring [to the witness-advocate's client] is substantial." *Id.*

Plaintiff has not met this burden. It asserts only generalized statements as to what prejudice BWX will face if Goodman or Glazer were to testify. Dkt. 5, Ex. 11 (McKinley Affirmation) ¶ 80 (arguing that their testimony would be "adverse" to BWX). Goodman refutes Plaintiff's suggestion that his testimony – if he were called – would be prejudicial, insisting that he was not involved in the drafting or review of agreements relevant to this litigation, was not "copied on the emails" that Plaintiff "alleges 'memorializ[ed] the [parties'] joint venture,'" and "did not, as Mr. Fabregas claims, play a 'central role in the creation of BBI.'" Dkt. 5, Ex. 13 (Goodman Decl.) ¶¶ 15-16. As

such, Plaintiff has failed to present the clear and convincing evidence that is required to disqualify Curtis under Rule 3.7(b).

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for disqualification is denied.  A telephone conference is scheduled for April 1, 2020 at 3:00 p.m. to discuss the pending cross-motions for summary judgment.  The parties shall use the dial-in information provided below to call in to that conference:

      Call-in Number: (888) 363-4749
      Access Code: 1015508

If it is not feasible for the parties to appear telephonically at that time, they should jointly notify the Court by letter and include proposed alternative dates for this conference.

SO ORDERED.

Dated:     March 27, 2020
          New York, New York

 

_____
      Ronnie Abrams
      United States District Judge